## FLORIDA GRAIN & ELEVATOR CO. v. UNITED STATES SHIPPING BOARD, EMERGENCY FLEET CORPORATION.

(District Court, S. D. Florida. December 16, 1924.)

### No. 1532.

1. **Shipping** ☞141(1)—Limitation of liability for delay in bills of lading held not to extend to damage due to negligence.

A provision in bills of lading that the carrier shall not be liable for "any loss or damage caused by prolongation of the voyage" is intended to protect it from liability for accidental delay, and does not exempt it from liability for the effect of delay caused by its own default or negligence or that of its agents.

2. **Shipping** ☞141(1)—Carrier held not relieved from liability for damage to cargo by provision against delay in bills of lading.

A steamship, carrying a shipment of corn on a voyage from Jacksonville to Havana and intermediate ports, remained at Matanzas, within 80 miles of Havana, for nearly two months because of failure of the carrier to supply funds for discharge of cargo there, and the delay caused damage to the corn. *Held*, that the carrier was not relieved from liability by a provision in the bills of lading that it should not be liable for loss or damage caused by prolongation of the voyage.

3. **Shipping** ☞131—Measure of damages for damage to cargo difference between contract price and price received.

Where corn shipped under a contract of sale at port of destination was damaged in transit through fault of the carrier, the buyer refused to accept it and it was sold for account of the seller, the measure of his damages recoverable from the carrier was the difference between the contract price and the price received, with interest, and incidental expenses incurred.

On rehearing.

Former opinion (300 F. 169) reversed, and decree for libelant.

McCollum & Howell, of Jacksonville, Fla., for libelant.

Maynard Ramsey, Asst. U. S. Dist. Atty., of Jacksonville, Fla. (Arthur M. Boal, of Washington, D. C., on the brief), for respondent.

CALL, District Judge. On July 2, 1924, a final decree was entered dismissing the libel herein at the cost of the libelant. On July 10th, a petition for rehearing was filed and granted on August 11th, and the cause reheard upon final hearing.

The libel in this case seeks to recover the difference between the market price of the corn in the market of Havana, Cuba, at the time the corn should have arrived there in good condition, and the amount for which it sold in a damaged condition when it did arrive, which damaged condition it is contended was caused by the unreasonable delay of the vessel at the Port of Mantanzas, Cuba, on the voyage from Jacksonville, Fla., to the Port of Havana, Cuba.

The testimony establishes this state of facts: On August 26, 1920, libelant delivered to the steamer Hossic, 20,000 bushels of No. 2 yellow corn, for shipment to the Port of Havana, Cuba; that three bills of lading were issued to libelant for said corn; 1,120 sacks in one bill, 1,680 sacks in the second, and 1,334 sacks in a third, all consigned to libelant, with directions to notify three parties in Havana, as specified in said bills of lading; that the steamer sailed from Jacksonville, September 10, 1920, on her voyage, and arrived at Mantanzas, Cuba, on September 24, 1920, and remained there until November 17, 1920, when she continued the voyage to Havana, arriving there the same day, when it was found that the corn was in such condition, damaged, etc., that it was unmerchantable, and the parties notified refused to receive same, and the corn was subsequently sold by the agent of the United States Shipping Board, Emergency Fleet Corporation, for $11,337.36, which was received by libelant on March 17, 1921.

[1] The several defenses propounded by the answer were disposed of in the opinion of this court, filed June 17, 1924, against the claims of respondent, and on the rehearing I see no reason to change that finding, but the decision against the libelant was placed upon the construction of clause 3 of the bills of lading, reading as follows: "It is mutually agreed that the carrier shall not be liable for loss or damage occasioned by causes beyond its control; * * * nor from any loss or damage caused by the prolongation of the voyage." These latter words were given a literal construction, and as the voyage was from Jacksonville to Havana, and the Port of Mantanzas being an intermediate port of the voyage, and the delay in completing the voyage occurred at the port, the libelant was dismissed. The construction of this clause was not touched upon in argument of proctors, nor does the answer propound this clause as defense, and the rehearing was properly granted.

Upon this rehearing the first consideration must be given to this clause, and its meaning ascertained. In Austrian Union S. S. Co. et al. v. Calafiore et al., 194 F. 378, 114 C. C. A. 296, Judge Pardee delivering the opinion of the court says: "The first thing which is always settled between a shipowner and a shipper of goods is the voyage. * * * The reservation in the bill of lading on which the claimant relies to relieve itself from liability for delay and detention at Tampa must be construed with reference to the voyage in contemplation."

In this cause the voyage contemplated was from Jacksonville to Havana, the ship touching at Mantanzas to discharge cargo at that port before proceeding to Havana.

"As the exceptions were introduced by the shipowners themselves in their own favor, they are to be construed most strongly against them." The Caledonia, 157 U. S. 137, on page 141, 15 S. Ct. 537, 543 (39 L. Ed. 644), Mr. Justice Brown dissenting, lays down the rule as to delay in delivering goods, as follows: "But in respect to the time of delivery, he was responsible only for the exertion of due diligence. * * * It is sufficient, if they exert due care * * * to guard against delay, if the goods are finally delivered in safety. The principle upon which the extraordinary responsibility of common carriers is founded does not require that that responsibility should be extended to the time occupied in the transportation." At page 143 (15 S. Ct. 545), he quotes Lord Chief Justice Cockburn, thus: "Where no time is mentioned for delivering goods carried, the obligation of the carrier is to deliver them within a reasonable time; * * * but the carrier must do that which is within his power, and which it is reasonable to expect that he should do for delivering the goods."

The general rule is that "the exceptions were intended to save the shipowner from liability for the effects of accident; and not to absolve him from the duty of exercising reasonable diligence."

The effect of the construction in the decree heretofore entered herein, placed upon the words of clause 3, as to the damage caused by the prolongation of the voyage, would be to exonerate the shipowner from

all such damage in the event that the voyage was prolonged by his neglect and failure to provide funds as charged in the libel.

If the rule as announced in the cases quoted from is applied, such a construction is unreasonable and cannot be said to have been within the contemplation of the parties.

I am therefore of opinion that the words, "from any loss or damage caused by the prolongation of the voyage," must be taken to mean, "not caused by the default or negligence of the shipowner or his agents." Being so construed, it then becomes a question of fact to be decided upon the testimony.

[2] A careful review of the testimony shows that the ship arrived in Mantanzas, some 80 miles from Havana, on September 24, 1920, and remained in the harbor until November 17th, when she continued the voyage to Havana, arriving there the same day. There was no attempt on the part of the respondent to show the cause of this long delay, except that strike conditions existed in the ports. The testimony shows that the strike conditions were not the cause of the delay, but the failure of the respondent to provide funds to have the cargo discharged at Mantanzas. This, according to the statement of the master of the ship, was the sole cause of the delay, and according to the witness Hollingsworth, there was no difficulty experienced in having their ships discharged, as labor of soldiers and strike breakers was plentiful. So, in my view, the delay did not result from causes beyond the control of respondent, nor was the prolongation of the voyage the result of accident or misfortune, but due to the neglect of respondent to furnish necessary funds to discharge cargo. In my judgment it became the duty of the respondent to account for the delay in delivering the goods at Havana, after the libelant had shown the date of sailing and arrival at Havana, and the burden of showing that the damages suffered came under the exceptions of the bill of lading rested upon the respondent, and this it has not attempted, except, as before noted, that the strike conditions existed at the ports of Mantanzas and Havana.

The libelant shows by its testimony that corn of the grade of the article shipped would not lose its grade in a voyage from Jacksonville to Havana in the time reasonably necessary for the ship to consume in making it; the condition of the corn on its arrival in Havana; the refusal of the consignees to receive it on arrival and the subsequent sale of the article; and the receipt by the libelant of the sum for which the damaged article was sold. These proofs in my judgment entitle the libelant to a decree.

[3] The claim is made in the libel for the difference between the market price in Havana on the day the ship should have reasonably arrived there and the amount the damaged article sold for on arrival; the expense incurred by the witness Smith and interest on the amounts found due. I am of opinion that the market price is not the proper measure of damages in this case. The proofs show that the corn was sold f. i. c., to parties in Havana at a stated price, the purchaser to pay import duties. The libelant is entitled to a decree for its actual damage suffered, and this would be measured by the difference in price for which the corn was sold and the amount received for the damaged article. Also to interest on this amount for the time it has been kept out of it, together with the expense necessarily incurred in sending a representative to Cuba.

The evidence is meager as to the price at which the corn was sold and general as to the expense of the agent sent to Cuba, and I deem it best that a commissioner should be appointed to ascertain these amounts, either upon the evidence already taken or upon such as the parties may produce before him. A decree will be entered accordingly.